UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEONARD C. RHODES (#128585)

VERSUS                                              CIVIL ACTION

LT. F. JACKSON, ET AL                               NUMBER 11-370-BAJ-SCR

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 29, 2012.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEONARD C. RHODES (#128585)

VERSUS                                    CIVIL ACTION

LT. F. JACKSON, ET AL                     NUMBER 11-370-BAJ-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court are the following motions:

1. Motion for Partial Summary Judgment, filed by defendants Warden Howard Prince, Asst. Warden Frederick Boutte, Lt. Freddie Jackson, Mental Health Director Clay Williams and Asst. Mental Health Director James Dulaney. Record document numbers 13.

2. Motion for Partial Summary Judgment, filed by defendant Dr. Matthew Gamble. Record document number 31.

3. Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, filed by defendant Lt. Jason Russ. Record document number 55.

The summary judgment motions are opposed.[1] No opposition has been filed to the motion to dismiss.

For the reasons which follow, the defendants' motions should be granted.

---

[1] Record document numbers 20 and 42, respectively.

## I. Background

Pro se plaintiff, an inmate confined at Hunt Correctional Center (HCC), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Howard Prince, Asst. Warden Frederick Boutte, Lt. Jason Russ, Lt. Freddie Jackson, Mental Health Director Clay Williams, Asst. Mental Health Director James Dulaney, and Dr. Matthew Gamble. Plaintiff alleged that he was denied adequate mental health treatment, unidentified security officers retaliated against him for filing administrative grievances, and he is being housed in the same housing unit as a known enemy, all in violation of his constitutional rights.

Plaintiff alleged that in June 2009, he was transferred to HCC for mental health reevaluation. Plaintiff alleged he was placed in the Hunt Special Unit (HSU) by Dr. Gamble, a psychiatrist. Plaintiff alleged that on May 13, 2010, Dr. Gamble authorized his transfer out of the HSU even though he is still mentally ill. Plaintiff alleged that Dr. Gamble knew he would be victimized by other inmates unless he was housed in the HSU.

Plaintiff alleged that Lt. Jackson, Lt. Russ and Asst. Warden Boutte conspired with and manipulated Dr. Gamble, Williams and Dulaney into authorizing his transfer out of the HSU. Plaintiff alleged that after being transferred out of the HSU he was assaulted and sexually abused by unidentified inmates in Beaver 5 Cell block. Plaintiff alleged that on November 6, 2010, he was

2

assaulted by his cell mate who became irritated with him because he smelled bad and spoke to himself.

Plaintiff alleged that the defendants had other inmates assault him in retaliation for filing administrative grievances against the defendants, he was sprayed numerous times with chemical agents, and he was issued false disciplinary reports by unidentified security officers. Plaintiff alleged that unidentified security officers housed a known enemy who previously assaulted him on the same unit, and that the unidentified security officers are not protecting him from assault because they are co-workers and friends of Lt. Russ, Lt. Jackson and Asst. Warden Boutte.

Warden Prince, Asst. Warden Boutte, Lt. Jackson, Dulaney and Williams moved for summary judgment relying on a statement of undisputed facts, the affidavits of Rhonda Weldon and defendants Williams and Dulaney, a copy of excerpts from the plaintiff's master prison record, copies of the plaintiff's inmate location sheets, a copy of the plaintiff's conduct record, and the results of Administrative Remedy Procedure (ARP) numbers HCC-2010-531, HCC-2010-1214 and HCC-2010-1321.[2]

Plaintiff opposed these defendants' motion relying on a

---

[2] Dr. Gamble and Lt. Russ had not been served with the complaint at the time these defendants filed their motion for summary judgment. Thereafter, Dr. Gamble filed his motion for summary judgment and Lt. Russ filed his motion to dismiss. Record document numbers 31 and 55, respectively.

3

statement of undisputed facts and a copy of a Security Call Out List dated August 30, 2011.

Dr. Gamble moved for summary judgment relying on a statement of undisputed facts, the results of ARP numbers HCC-2010-531, HCC-2010-1214 and HCC-2010-1321, his own affidavit, copies of disciplinary reports and Warden's Unusual Occurrence Reports, excerpts from the plaintiff's master prison record, copies of the plaintiff's inmate location sheets, copies of the plaintiff's conduct record, a copy of the plaintiff's enemy list and copies of the plaintiff's mental health records.

Plaintiff opposed Dr. Gamble's motion relying on the affidavit of inmate Eric Gipson and his own affidavit, a copy of a psychiatric progress note dated June 14, 2010, a copy of his conduct report, and a copy of the Offenders Relief Request Form from his ARP HCC-2010-459.

Lt. Russ moved to dismiss for failure to state a claim upon which relief can be granted.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing

4

that there is a genuine issue for trial.  Rule 56(c).

**B. Failure to Exhaust Administrative Remedies**

Defendants argued in their separate motions for summary judgment that the plaintiff failed to exhaust available administrative remedies before filing suit regarding certain claims asserted against each of them.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending.  *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999).  A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions.  *Johnson v.*

*Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

Plaintiff alleged in the complaint that he exhausted available administrative remedies against the defendants in ARP HCC-2010-531, HCC-2010-1214 and HCC-2010-1321.[3]

The summary judgment evidence showed that the plaintiff filed ARP HCC-2010-531 on May 28, 2010, complaining that security officers manipulated the treatment team into transferring him out of the HSU.[4] The ARP was accepted on June 8, 2010, and was denied at the First Step on June 14, 2010 and at the Second Step on August 18, 2010.

The summary judgment evidence showed that the plaintiff filed ARP HCC-2010-1214 on December 3, 2010, complaining that defendant

---

[3] Record document number 1, Complaint, p. 4.

[4] Record document number 13-3, Exhibit A.

Williams discriminated against him when he refused to transfer him to Dixon Correctional Institute.[5] The ARP was accepted on December 9, 2010, and was denied at the First Step on December 20, 2010 and at the Second Step on February 8, 2011.

The summary judgment evidence showed that the plaintiff filed ARP HCC-2010-1321 on January 10, 2011, complaining that defendants Dr. Gamble, Williams and Dulaney transferred mentally ill inmates out of the HSU, exposing them to assaults by other inmates.[6] The ARP was accepted on February 21, 2011, and was denied at the First Step on February 25, 2011 and at the Second Step on May 16, 2011.

A review of the administrative grievances showed that the plaintiff did not exhaust available administrative remedies regarding his claims that the defendants conspired to have him transferred from the HSU, had other inmates assault him in retaliation for filing administrative grievances, he was sprayed with a chemical agent, he was issued false disciplinary reports, and that he was assaulted by a known enemy who was placed on his housing unit.

Except for his claims that Dr. Gamble was deliberately indifferent to his health and safety when he authorized his transfer out of the HSU, and Lt. Jackson, Lt. Russ and Asst. Warden Boutte manipulated Dr. Gamble, Williams and Dulaney into

---

[5] Record document number 13-4, Exhibit B.

[6] Record document number 13-5, Exhibit C.

transferring him out of HSU, the plaintiff failed to exhaust available administrative remedies regarding the claims raised in the Complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a).

**C. Official Capacity**

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Therefore, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

### D. Respondeat Superior

Plaintiff named Warden Prince as a defendant but failed to allege any facts against him.

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of

constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegation that Warden Prince is responsible for the actions of his subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

**E.1. Manipulation of Medical Staff - Claim Against Lt. Russ**

Plaintiff alleged that Lt. Jackson, Lt. Russ and Asst. Warden Boutte manipulated Dr. Gamble, Williams and Dulaney into transferring him out of HSU.

Plaintiff's allegations against Lt. Russ not only fail to state a claim upon which relief can be granted, the plaintiff's claim against him is legally frivolous.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

10

*Ashcroft v. Iqbal*, 556 U.S. 662,\_\_\_\_, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

Subsection (c)(1) of 42 U.S.C. § 1997e provides the following:

> (c) Dismissal.--(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

An in forma pauperis suit is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733 (1992); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1831-32 (1989); *Hicks v. Garner*, 69 F.3d 22, 24 (5th Cir. 1995). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton,* 504 U.S. at 33-34, 112 S.Ct. at 1733. Pleaded facts which are merely improbable or

11

strange, however, are not frivolous for section 1915(d) purposes. *Id.; Ancar v. SARA Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). Dismissal under 28 U.S.C. § 1915(d) may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

"A document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, 127 S.Ct. at 2200 (citations omitted). But even a pro se complainant must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." *Id.* at 1949-50 (internal quotation marks omitted).

Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections; inmates have no right to a particular classification under state law. *McGruder v. Phelps*, 608 F.2d 1023 (5th Cir. 1979.)

Plaintiff's allegation that Lt. Russ manipulated medical personnel into transferring him to another housing unit is insufficient to rise to the level of a constitutional violation.

### E.2. Manipulation of Medical Staff - Claims Against Lt. Jackson and Asst. Warden Boutte

The summary judgment evidence showed that after the plaintiff was transferred to HCC for a mental health reevaluation he was placed in the HSU as a Level 1 patient.[7] On May 13, 2010, after Dr. Gamble determined that the plaintiff was no longer appropriate for the HSU program, his mental health status was raised to Level 2, indicating that he was no longer acutely ill.[8] Level 2 mental health patients live in the prison's general housing areas.[9]

The summary judgment evidence showed that only Dr. Gamble, the plaintiff's treating psychiatrist, had authority to transfer the plaintiff from the HSU to the general prison population.[10] There is no evidence in the record that Lt. Jackson, Lt. Russ or Asst. Warden Boutte were responsible for the plaintiff's transfer out of the HSU. Lt. Jackson and Asst. Warden Boutte are entitled to summary judgment on this claim as a matter of law.

---

[7] Record document number 13-7, Exhibit E, affidavit of James Dulaney (hereafter, Dulaney affidavit).

[8] *Id.*

[9] *Id.*

[10] Record document number 13-6, Exhibit D, affidavit of Clay Williams (hereafter, Williams affidavit); record document number 31-6, affidavit of Dr. Matthew Gamble (hereafter, Gamble affidavit).

**F. Deliberate Indifference to Health and Safety - Claim against Dr. Gamble**

Plaintiff alleged that Dr. Gamble was deliberately indifferent to his health and safety when the doctor ordered him transferred from the HSU to general population.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

As to this claim, the summary judgment evidence showed that there is no genuine dispute as to the following material facts:

> HCC is the only institution in the state that has an acute psychiatric unit which is staffed by nurses and provides inpatient treatment 24 hours per day, seven days per week.[11] Care code 1 is the most acute mental health level of care provided and offenders who are assessed as being Level 1 mental health patients live on the HSU.[12] There are more than

---

[11] Record document number 31-6, Gamble affidavit).

[12] *Id*.

40 single-person cells on the HSU.[13] Level 2 mental health patients live in general housing areas.[14] Inmates who are transferred to HCC for psychiatric reevaluation are temporarily housed in the HSU or the D1 cellblock.[15] The D1 cellblock houses HSU patients and other patients in need of mental health observation or reevaluation even though it is not under the auspices of the HSU.[16]

Dr. Gamble has a contract with HCC, and his duties require him to review and evaluate mental health records, provide mental health evaluations and manage medication that is prescribed to psychiatric patients.[17] Dr. Gamble is the only individual authorized to make a mental health diagnosis, designate an offender as being a Level 1 mental health patient and determine whether the offender needs to be assigned to or removed from the HSU.[18]

Plaintiff was transferred to HCC for mental health reevaluation on June 3, 2009 and was housed in the D1

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

cellblock.[19] On June 11, 2009, Dr. Gamble evaluated the plaintiff and diagnosed him as suffering from impulse control disorder, psychosis and antisocial personality disorder.[20] Dr. Gamble designated the plaintiff as a Level 2 patient and he was transferred to the general prison population.[21] Two days later the plaintiff was transferred to extended lockdown because of disciplinary issues.[22] Dr. Gamble continued to treat the plaintiff while he was confined in extended lockdown.[23]

Plaintiff was on standard suicide watch throughout the month of October 2009.[24] On November 24, 2009, Dr. Gamble ordered the plaintiff transferred to the HSU as a Level 1 mental health patient for further monitoring for objective psychotic signs versus malingering.[25] Plaintiff did not go on

---

[19] *Id.*; record document number 51-1 (plaintiff's mental health records, under seal), pp. 14-16, Exhibit 6.

[20] Record document number 31-6, Exhibit D, Gamble affidavit.

[21] *Id.*; record document number 51-5 (plaintiff's mental health records, under seal), p. 7, Exhibit 6-4.

[22] *Id.*; Exhibit 6-4 at 14-20.

[23] Record document number 31-6, Exhibit D, Gamble affidavit.

[24] *Id.*

[25] *Id.*; record document number 46 (plaintiff's mental health records, under seal), pp. 7-9, Exhibit J.

any suicide watches after being transferred to the HSU.[26] Plaintiff remained housed at the HSU between November 24, 2009 and May 13, 2010.[27] Because there were no objective observations of psychosis or disorganized speech, thought or behavior during this period, Dr. Gamble raised the plaintiff's mental health Level 2.[28] At this elevated level of care, the plaintiff no longer needed to be housed in the HSU and could be housed in the general population.[29]ABr. Gamble made the assessment that the plaintiff was inappropriate for the HSU program because his behavior was too disruptive for the unit's therapeutic environment.[30]

Plaintiff continued to receive anti-psychotic medications for his reported symptoms and he was treated by mental health care professionals on a regular basis and when warranted, his level of care and location were modified.[31]

There is no evidence that Dr. Gamble knew the plaintiff faced a substantial risk of serious harm and disregarded that risk by

---

[26] Record document number 31-6, Exhibit D, Gamble affidavit.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*; record document numbers 44-53 (plaintiff's mental health records, under seal, in globo).

17

failing to take reasonable steps to abate it.  There is simply no summary judgment evidence that Dr. Gamble was deliberately indifferent to the plaintiff's health or safety.  Dr. Gamble is entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is the recommendation of the defendants' motions for partial summary judgment be granted.

It is further recommended that the plaintiff's claims that the defendants conspired to have him transferred from the HSU, the defendants had other inmates assault him in retaliation for filing administrative grievances, that he was sprayed with a chemical agent, that he was issued false disciplinary reports, and that he was assaulted by a known enemy who was placed on his housing unit, be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), and with prejudice to refiling them in forma pauperis status.[32]

It is further recommended that the motion to dismiss by Lt. Jason Russ be granted, and that this action be dismissed.

Baton Rouge, Louisiana, February 29, 2012.

*signature*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[32] *Underwood v. Wilson*, 151 F.3d at 296.